MICHIGAN MORTGAGE-INVESTMENT CORPORATION *v.*
AMERICAN EMPLOYERS' INSURANCE CO. OF BOSTON.

1. Insurance—Fidelity Insurance—"Continuation Certificate" Creates New Contract.

   Where, on the payment of an additional premium, a surety company issued a "continuation certificate," thereby continuing in force a fidelity policy, a new contract was created, separate and distinct from that created by the original bond.

2. Same—Liability of Insurer Limited to Specified Amount Where Policy so Provides, Although Covering More Than One Period.

   Where a "continuation certificate," continuing in force for another year, upon payment of an additional premium, a fidelity policy, expressly provided that the "aggregate liability" of the surety company from the effective date of the policy should "not exceed the greatest amount for which the company shall have specifically guaranteed such employee," the company's liability is thereby limited under both the policy and the certificate to the amount specified, and recovery may not be had under both, although defalcations occurred during both periods which exceeded the amount specified. Fellows and Clark, JJ., dissenting.

Renewal of bond insuring fidelity of officer or employee as affecting limit of indemnity, see annotation in 42 A. L. R. 834.

Case-made from Ingham; Carr (Leland W.), J. Submitted April 11, 1928. (Docket No. 116, Calendar No. 33,474.) Decided October 1, 1928.

Assumpsit by the Michigan Mortgage-Investment Corporation against the American Employers' Insurance Company, of Boston, Massachusetts, on a bond. Judgment for plaintiff for less than amount claimed. It appeals. Affirmed.

*Charles W. McGill,* for appellant.

· *Frederick T. Witmire (Joseph H. Dunnebacke,* of counsel), for appellee.

Sharpe, J. On March 14, 1924, the defendant issued a policy wherein it agreed to indemnify plaintiff for one year in a sum not exceeding $5,000 for any loss occasioned by the embezzlement or misappropriation of its funds by any of the employees named therein, among whom was Gretchen K. Colt. On March 14, 1925, it issued what is called a "continuation certificate," reading as follows:

"In consideration of the sum of eighty-five and no-100 dollars ($85.00) Schedule Bond F6, issued to Michigan Mortgage-Investment Company on the fidelity of the employees guaranteed as per schedule is hereby continued in force from noon of the 14th day of March, 1925, to noon of the 14th day of March, 1926, subject to all the terms and conditions in the aforesaid bond;

"Provided, however, that the aggregate liability of the company from the effective date of said Schedule Bond No. F6 to the date of the expiration of this certificate, for or on account of any act or acts of any one of the employees covered, shall not exceed the greatest amount for which the company shall have specifically guaranteed such employee since the effective date of said bond."

The record discloses that plaintiff suffered a loss within the terms of the policy by the misappropriation of funds by Mrs. Colt in excess of $5,000 in each of those years. The question here presented is whether the proviso in the continuation certificate limits defendant's liability under both the policy and the certificate to $5,000.

Counsel for the plaintiff insists that the continuation certificate created a new contract, separate and distinct from that entered into the year before. There appears to be a conflict in the authorities as to the effect to be given to such a renewal certificate. They are reviewed at some length in a note to 42 A. L. R., at page 834 *et seq.* The law in this State was, we think, settled in *Ladies of Maccabees* v. *Surety Co.,* 196 Mich. 27. It was there held that a renewal certificate in language quite similar to that before us created a new contract. The issue there presented was the right of plaintiff to recover under the bond first given. It appeared that the action had not been brought within one year after the termination of the period for which liability attached thereunder. The question here presented was not considered. But, assuming that by the issue of the continuation certificate a new contract was entered into, extending the indemnity provided for in the old one, the liability under that first issued was limited by the provision therefor in the continuation certificate. It is therein expressly provided that the "aggregate liability" from the effective date of the bond—. . . . . . . . .

"shall not exceed the greatest amount for which the company shall have specifically guaranteed such employee since the effective date of said bond"

—and that amount was the sum of $5,000. The trial court so held, and with this conclusion we agree. To hold otherwise, this language would be meaningless.

A similar question was before the supreme court of Illinois in *United States Fidelity & Guaranty Co.* v. *National Bank,* 233 Ill. 475 (84 N. E. 670). The provision in the continuation certificate read as follows:

"Provided the aggregate liability of the United States Fidelity & Guaranty Company from the date of the issuance of said schedule bond to the date of the expiration of this certificate, for or on account of any act or acts of any one of said persons, shall not exceed the sum written opposite that person's name upon the attached schedule."

After discussing the claim of counsel for plaintiff that a new contract was created thereby, the court said:

"Under the view we take of this case it is not necessary for us to decide which of these parties has made the better case for the other. In our opinion the clause above quoted from the renewal certificate precludes appellee from recovering more than the face value of the original bond, together with the interest thereon."

The judgment is affirmed.

Fead, C. J., and North, Wiest, McDonald, and Potter, JJ., concurred with Sharpe, J.

Fellows, J. *(dissenting).* I am not persuaded that we should follow the Illinois case cited by my Brother. The Illinois court did not seem to regard as controlling the question of whether the renewal created a new contract or not. To my mind that is the controlling question. If there is but one contract agreeing to indemnify up to a certain sum, manifestly that sum is the limit that may be recovered; if there are two contracts each agreeing to indemnify for loss during the period covered by it

up to a certain sum, and a loss occurs during both periods, I see no impediment in a recovery on both contracts up to the limit fixed in each. If this is not the rule, then plaintiff received no consideration for the premiums paid on the second or renewal policy, and the only way employers may be protected by this character of insurance will be to take a new policy in a different company each year. If there had been two original policies issued by defendant to plaintiff covering different periods, each containing the language limiting recovery quoted by my Brother, I do not think we would hesitate in holding that such limitation was a limitation on the amount recoverable under each of the policies for loss during the period covered. I do not believe we would extend the limiting languages to losses arising under the other policy. In the instant case the original policy was for $20,000, covering the officers set out in a schedule attached to it; they were: "Clarence H. Palmer, Secy. and Treas., $10,000, Clarence H. Palmer, Asst. Secy. and Treas., $5,000, Gretchen K. Colt, Cashier, $5,000." To the second policy or renewal there was also attached a schedule showing the coverage to be "Vernon J. Padgett, Secy. and Treas., $10,000, Clarence H. Palmer, Asst. Secy. and Treas., $5,000, Gretchen K. Colt, Cashier, $5,000." Could it be said that if Mr. Palmer as treasurer defaulted in the sum of $10,000 the first year and Mr. Padgett defaulted in the same office in the same sum the second year, that the language used would limit recovery for both defalcations to the sum of $10,000, or would it be held that the language used limiting recovery was applicable only to the policy in which it was used?

The courts of the country are not in unison on the question of whether the renewal of a policy of insurance is a new contract or a continuance of the old

one.   Early in its history this court in plain, unequivocal language aligned itself with those courts holding that the contract was a new and independent contract.   *Brady* v. *Insurance Co.*, 11 Mich. 425. This case was followed and applied to fidelity insurance in *Ladies of Maccabees* v. *Surety Co.*, 196 Mich. 27.   In addition to the authorities there cited, see *Mayor and Council of Brunswick* v. *Harvey*, 114 Ga. 733 (40 S. E. 754) ; *Florida, etc., R. Co.* v. *Surety Co.*, 99 Fed. 674; *Hawley* v. *Guaranty Co.*, 100 N. Y. App. Div. 12 (90 N. Y. Supp. 893), affirmed without opinion, 184 N. Y. 549; *Alex. Campbell Milk Co.* v. *Guaranty Co.*, 161 N. Y. App. Div. 738 (146 N. Y. Supp. 92) ; *United States Fidelity & Guaranty Co.* v. *Williams*, 96 Miss. 10 (49 South. 742) ; *Proctor Coal Co.* v. *Guaranty Co.*, 124 Fed. 424.   In most of these cases the insurance companies have invoked the rule that the renewal created a new contract.   This they have done in the main to secure the advantage of the time limit in which an action on the policy may be brought.   But manifestly if it be the rule that a new contract has been created for one purpose it must be a new contract for all purposes.

If there are two separate and distinct contracts of insurance covering different periods, for different considerations involved in the instant case, and our former decisions so hold, recovery for loss during the period covered by the first policy is limited, and limited only, by the amount named in the schedule attached to that policy, and recovery for loss during the period covered by the second policy is limited, and limited only, by the amount named in the schedule attached to that policy.   If I am right in my conclusion, the judgment should be reversed and a new trial granted, with costs to plaintiff.

CLARK, J., concurred with FELLOWS, J.