### SIMPSON *v.* GOODRICH.

INSURANCE—MUTUAL FIRE COMPANY—RECEIVERS—ASSESSMENT.
> Under order to receiver of mutual fire insurance company to levy assessments to cover deficits accruing in certain years according to amount of insurance carried by members which accrued during respective years, receiver's assessment which failed to ascertain net deficit for first of such named years but included total deficit existing at end of such year and which deficit was increased by interest on funds borrowed to pay previous losses *held,* not in accordance with order and a matter open to defense by member in receiver's action brought in another county to collect assessment where method of assessment was not approved by court making order for assessment.

Appeal from Lapeer; Cramton (Louis C.), J. Submitted April 29, 1937. (Docket No. 78, Calendar No. 39,243.) Decided June 7, 1937.

Assumpsit by William G. Simpson, receiver of the Lapeer Farmers Mutual Fire Insurance Association, against Norman Goodrich upon an assessment levied by order of the court. From order dismissing case, plaintiff appeals. Affirmed.

*G. C. Leibrand, Earl L. Burhans (Samuel S. Greenberg,* Assistant Attorney General, of counsel), for plaintiff.

*Samuel R. Williams,* for defendant.

WIEST, J. December 23, 1935, the circuit court for the county of Ingham, in chancery, entered an order authorizing the receiver of the Lapeer Farmers Mutual Fire Insurance Association to levy an assessment against the members of that company for the purpose of securing money to pay the liabilities.

We quote from the order:

"That the said receiver, acting as deputy insurance commissioner in the premises, be authorized and instructed to levy an assessment computed on each year in which a deficiency occurred during the years of 1930, 1931, 1932, 1934 and 1935. That such assessment be levied *pro rata* against those persons who were members of said insurance company during the years when such deficits occurred, according to the amount of insurance which such persons carried during those years. That the said receiver ascertain by such computation how much is required per $1,000 of insurance of such members to equal the amount of deficits which accrued during those respective years, and that he add to such amount 100 per cent. to cover the expenses of this liquidation, including costs of collections and collection suits, and to provide for deficiencies arising out of uncollectible assessments and judgments.

"That in addition to the method of levying assessments as provided for in paragraph 1 above, the receiver be authorized to reassess those members who were assessed by said insurance company in former years but who failed to pay such company assessments, but that such persons be reassessed at the same amount in which they were assessed by the company."

When assessments were so made and not paid the receiver was authorized to bring suit in the circuit court for the county of Lapeer. Such a suit was brought against defendant herein and, upon hearing, was dismissed by the court. Plaintiff reviews by appeal. If the assessment was not made as authorized then the suit was properly dismissed.

The record shows that in making the assessment the receiver departed from the order to the detriment of defendant.

The receiver testified:

"I took the total liabilities at the end of 1930 and deducted the assessments collected in 1931 on the 1930 assessment roll and took the balance for the deficiency of that year. By that method I got a certain rate, and that rate was applied *pro rata* to each of the members. * * * I couldn't say what the total liabilities on January 1, 1930, were. I made a determination of those liabilities at the end of 1930. That is as far as I went back or had any instructions to go back was in the year 1930.

"*Q.* So you made no investigation as to when the liabilities occurred, is that correct?

"*A.* Not back of 1930. I don't know when they were incurred.

"*Q.* And you don't know who the policyholders were when they were incurred, is that correct?

"*A.* I have not checked back beyond 1930.

"*Q.* How did you know what the liabilities were at the end of 1930?

"*A.* I took the insurance commissioner's reports. * * * I don't know how much was assessed by the company for the year 1928 or 1929 or how much was collected that year or how much was assessed in 1929 or how much was collected in 1929. I don't know the amount of the assessment by the company for the year 1930 or how much the losses were for the year 1930, or how much the expenses of the company for the year 1930 were, or how much was collected in assessments in the year 1930.

"*Q.* You made no effort to get any of this information I have asked you about?

"*A.* I didn't think it was necessary.

"*Q.* Did you make any effort to get it?

"*A.* I did not.

"*Q.* It was available to you, was it?

"*A.* Yes."

Such assessment was a departure from the authorization and loaded the deficit for the year with previous losses, with release of former members from liability, and shouldered upon the membership in 1930 large amounts, so counted as deficits for that year, inclusive of interest upon borrowed money used in previous payment of losses, without collection under assessment.

The court order clearly pointed the method of ascertaining and enforcing the liability of policyholders for years previous to 1930.

Under the testimony of the receiver the assessment for the year 1930 was unenforceable and, as it does not appear that the assessment was ever approved by the circuit court for the county of Ingham, it was open to defendant to make the contest in the suit at bar.

Under the testimony of the auditor who examined the books of the company for the years 1926 to 1932, inclusive, it appears that moneys borrowed previous to 1930 to pay losses was in some instances carried forward from year to year as a current matter by way of renewal notes and interest paid.

An examination of the record discloses that plaintiff did not make the assessment for 1930 and subsequent years in accordance with the order of the court appointing and instructing him, and the court in the instant case was not in error in dismissing the suit.

Affirmed, with costs to defendant.

FEAD, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.